IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **11-cv-03074-JLK**

**TIMOTHY SIAKI,**
**KIMBERLEE MOORE,**
**COLORADO CROSS-DISABILITY COALITION**,

       Plaintiffs,

v.

**DOUGLAS DARR, in his official capacity as Sheriff of Adams County, Colorado,**

       Defendant.

---

## ORDER GRANTING STIPULATED MOTION TO DISMISS

Kane, J.

This matter is before the Court on the parties' Stipulated Motion to Dismiss (Doc. 34). Having reviewed the Motion and the underlying Settlement Agreement (Doc. 35), and having conferred with Magistrate Judge Boland who oversaw the settlement negotiations, I GRANT the Motion.

IT IS ORDERED that the Court will retain jurisdiction to enforce the terms of the Parties' Settlement Agreement, appended hereto, pursuant to Rule 41 (a)(2) and as authorized by *Kokkonen v. Guardian Life Inc. So. of America*, 511 U.S. 375 (1994).

IT IS FURTHER ORDERED that the Parties shall bear their attorney fees and costs as provided in the Settlement Agreement.

Dated: September 27, 2012

                                             **s/John L. Kane**
                                             SENIOR U.S. DISTRICT JUDGE

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE ("Agreement") is made by and between Plaintiffs Timothy Siaki, Kimberlee Moore, Michaelee Owen, Jeanine Roybal, Colorado Cross-Disability Coalition, and Colorado Association of the Deaf ("Plaintiffs") and Sheriff Douglas Darr, in his official capacity as Sheriff of Adams County, Colorado ("Defendant"), collectively referred to as the "Parties."

WHEREAS, on January 26, 2012, Plaintiffs filed their Amended Complaint against Defendant in a civil action in the United States District Court for the District of Colorado, Civil Action No. 2012-cv-03074-JLK-BNB, in which they allege the Defendant has violated the ADA and Section 504 ("Civil Action"); and,

WHEREAS, Defendant has denied and continues to deny all of the material allegations set forth in the Civil Action and continues to assert that Plaintiffs' claims are meritless and that it is not liable to them in any way or upon any claim or cause of action; and,

WHEREAS, Plaintiffs and Defendant desire to resolve and settle in full all claims that Plaintiff has, had, or may have against Defendant or its past or present attorneys, agents, or assigns, including all claims that were, or are related to the subject-matter of, and could have been raised in, the Civil Action; and,

WHEREAS, the Parties enter into a this agreement contingent upon the Court granting a stipulation for dismissal that includes a provision allowing the Court to enforce the terms of this Agreement as set forth in *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994);

1

NOW, THEREFORE, in order to avoid time-consuming and costly litigation with respect to the Civil Action, and in exchange for other good and valuable consideration as set forth below, the sufficiency of which is hereby expressly acknowledged, Plaintiffs and Defendant agree as follows:

1   CONDITIONS PRECEDENT TO THIS AGREEMENT

This Agreement shall be conditioned upon, and shall be effective only upon, the occurrence of all of the following events:

    1.1   This Agreement must be signed by all of the Parties.

    1.2   The Court must grant a dismissal of the Civil Action which incorporates the Agreement for the purpose of retaining jurisdiction for the future enforcement pursuant to *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994).

2   DEFINITIONS

As used in this Agreement, the following terms have the meanings set forth in this Section:

    2.1   "ACDF" means the Adams County Detention Facility.

    2.2   "ADA" means Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* and its implementing regulations, 28 C.F.R. § 35.101.

    2.3   "Agreement" means this Agreement, including any exhibits or attachments hereto.

    2.4   "Auditory Disability" means a disability that substantially limits the major life activity of hearing, and specifically includes deaf individuals and individuals that are hard-of-hearing.

    2.5   "Auxiliary Aids and Services" has the definition set forth in the ADA and Section 504.

    2.6   "CADI" means an individual with an Auditory Disability that has been Contacted,

        or Detained by Defendant or any member of Defendant's Personnel.

2.7     "Civil Action" means this lawsuit, *Siaki, et al. v. Darr*, Civil Action Number 11-cv-03074-JLK.

2.8     "Compliance Log" means the log created and maintained pursuant to Section 5.1.1 of this Agreement.

2.9     "Contact" and "Contacted" means any questioning or interrogating of witnesses or suspects by any member of Defendant's Personnel.

2.10     "Contacted Individual" means a member of the public who has been Contacted by Defendant or any of Defendant's Personnel.

2.11     "Detained Individual" means a member of the public whose freedom is restrained in any significant way by Defendant or any member of Defendant's Personnel.

2.12     "Detention" means all periods of timeduring which a member of the public is held at the ACDF.

2.13     "Effective Date" means the date the Court enters the Order of Dismissal.

2.14     "Emergency" means a situation that demands immediate action in order to protect the safety and welfare of the public or Defendant's Personnel, but does not include any period of time following abatement of circumstances that caused a risk to the safety and welfare of the public.

2.15     A form substantially similar to "Exhibit A" shall be used to offer an interpreter to a CADI when that individual is brought into ACDF for booking. Exhibit A is attached hereto.

2.16     A form substantially similar to "Exhibit B" shall be used to demonstrate Defendant offered Auxiliary Aids and Services and to identify the auxiliary aid or service selected. Exhibit B is attached hereto.

2.17     "Inmate Handbook" means the handbook distributed to Detained Individuals at the ACDF and includes all written rules and policies provided to Detained Individuals when they are detained at ACDF.

2.18     "Non-emergency" means all situations that do not constitute an Emergency, including the period of time following abatement of circumstances that constituted an Emergency.

    2.19    "Personnel" means all employees of the Adams County Sheriff's Office, including deputies, agents, representatives, staff, employees, and contractors under the direct supervision of the Sheriff's Office.

    2.20    "Qualified Interpreter" has the meaning set forth in the ADA and Section 504.

    2.21    "Released Claims" means Plaintiffs' claims against Defendant as recited in Plaintiffs' Amended Complaint, and any and all counterclaims Defendant may have against Plaintiffs.

    2.22    "Remedies" mean the remedies provided in Section 7 of this Agreement.

    2.23    "Section 504" means 29 U.S.C. § 794 *et seq.* and its implementing regulations.

    2.24    "Sign Language DVDs" means the videos regarding the Inmate Handbook, and Booking Process that provide information to deaf inmates via an interpreter using American Sign Language.

    2.25    "Training Session" means the mandatory training Defendant shall institute pursuant to Section 4.2 of this Agreement.

## 3    TERM OF AGREEMENT

The term of this Agreement shall commence from the date that the Court approves the dismissal and continue for a term of two years.

## 4    POLICIES AND TRAINING

    4.1    Defendant shall implement the terms of this Agreement by adopting, maintaining and complying with written Sheriff's Office Policies and Jail Division Post Orders, attached hereto as Exhibit C. Unless otherwise specified, Defendant shall comply with all terms of this Agreement, including implementation of the Sheriff's Office Policies and Jail Division Post Orders within 30 days from the date the Court approves the dismissal of the Civil Action.

    4.2    Defendant shall institute one mandatory Training Session (approximately 2 to 3 hours) conducted by an organization with experience with regard to individuals who are deaf whereunder all of the Defendant's Personnel that Contact the public on a routine basis undergo a training session, which shall provide detailed information concerning:

      4.2.1    Detecting the presence of Auditory Disabilities;

      4.2.2    The types of Auxiliary Aids and Services that exist and their respective efficacies; and

      4.2.3    Defendant's and Defendant's Personnel's obligations with respect to the provision of Auxiliary Aids and Services under State and Federal laws, and this Agreement.

      4.2.4    All of Defendant's Personnel required to take the Training Session shall have completed the Training Session no later than May 1, 2013.

4.3    Defendant shall, within ninety (90) days of the date the Court dismisses the case pursuant to Section 1.2 of this Agreement, revise its Sign Language DVD describing the steps in the booking process. The video will inform inmates who request the services of a sign language interpreter that interpreters will be made available for the following, and will provide instruction regarding how to make such requests:

> booking and admission;
> medical appointments and screening;
> programs;
> work program training;
> formal disciplinary actions; and
> release.

4.4    Defendant shall amend the Inmate Handbook to include instructions regarding a Detained Individual's rights under this Agreement, including information necessary for a Detained Individual to request the provision of Auxiliary Aids and Services, and information necessary for a Detained Individual to file a complaint, pursuant to Section 5.2 of this Agreement. The Handbook shall be amended to include information regarding how to request to review the Sign Language DVDs again.

4.5    Defendant shall show Detained Individuals with Auditory Disabilities a video of a Qualified Interpreter interpreting the entire Inmate Handbook, which shall be shown as soon as is practicable after the intake process and may be available for review again to Detained Individuals with Auditory Disabilities as soon as is practicable after such Detained Individual's request to review it again.

4.6    Defendant shall, within thirty (30) days of the date the Court enters this Agreement, post conspicuous signs in the ACDF, all substations, and all locations

    where Defendant or Defendant's Personnel may routinely have Contact with members of the public advising individuals with Auditory Disabilities of the availability of Auxiliary Aids and Services, including Qualified Interpreters. Such signs shall contain following language, or its substantial equivalent:

      To ensure effective communication with individuals who are deaf or hard-of-hearing, the Sheriff will provide auxiliary aids, such as, TTYs, equivalent services, and sign language interpreters at no cost. Please ask a deputy for assistance.

  4.8 Defendant agrees to purchase at least one videophone for use at ACDF. The videophone will be purchased and implemented within ninety (90) days after the planned upgrade to the internet/communication system is installed at ACDF. Defendant will prepare updates to Post Orders, the Inmate Handbook, and the DVDs explaining how deaf inmates can request use of the videophone.

5 VERIFICATION AND MONITORING

  5.1 Defendant shall verify and monitor compliance with this Agreement as follows:

    5.1.1 Defendant shall create and maintain a Compliance Log consisting of the following:

      5.1.1.1 Identify (by initials or other traceable method) the CADIs Defendant or Defendant's Personnel have Contacted and Detained;

      5.1.1.2 Identify such CADIs that have requested Auxiliary Aids and Services, including the specific Auxiliary Aid or Service requested, if any.

      5.1.1.3 Identify whether Auxiliary Aids or Services were offered to each such CADI.

      5.1.1.4 Identify the type of Auxiliary Aid or Service Defendant provided to each such CADI.

      5.1.1.5 If the type of Auxiliary Aid or Service Defendant provided differs from the type of Auxiliary Aid or Service a CADI has requested, Defendant shall state all reasons that the CADI was not provided with the Auxiliary Aid or Service the CADI requested.

      5.1.1.6 If Defendant did not provide a CADI with Auxiliary Aids or

          Services, Defendant shall state all reasons that the CADI was not provided with Auxiliary Aids or Services.

          5.1.1.7 Identify any complaints, comments or concerns made by CADIs, or individuals associated with CADIs, regarding Defendant's provision, or lack thereof, of Auxiliary Aids and Services to CADIs.

          5.1.1.8 Copies of any kites regarding denial of effective communication.

    5.1.2    Defendant shall provide the Compliance Log to the County Attorney's Office on a quarterly basis for one year after the Effective Date.

    5.1.3    The County Attorney's Office will make the Compliance Log available for inspection to interested parties, including Plaintiffs' counsel.

5.2    In addition to creating and maintaining a Compliance Log, Defendant shall inform each and every CADI that, in the event such CADI believes he or she has been denied effective communication, such CADI may complete a kite or other written complaint regarding the denial. Copies of such kites/complaints shall be maintained and kept with the Compliance Log referenced in 5.1.3 above.

6    DISPUTE RESOLUTION

Any dispute between the Plaintiffs and Defendant concerning compliance with the terms of this Agreement will be addressed as follows:

6.1    If any Party has reason to believe that a dispute exists, prompt written notice will be provided to the other Party at the address provided in Section 10 of this Agreement. Notice regarding alleged non-compliance by Defendant shall be provided to the County Attorney's Office.

6.2    Defendant will be given one week after notice to cure any non-compliance.

6.3    Within one week after receipt of the notice, counsel for the Parties will confer by telephone or in person and attempt to resolve the dispute. If Defendant has cured its non-compliance, the matter will be considered resolved.

6.4    If the conferral process does not occur or does not resolve the dispute, the matter may be submitted by either Party to the U.S. District Court as contemplated by *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

    6.5    If Plaintiffs are successful at convincing the Court that Defendant is not in compliance with the Agreement, Defendant will pay Plaintiffs their reasonable attorneys' fees, litigation expenses and costs incurred during the Dispute Resolution. If Plaintiffs bring a dispute to the Court and are not successful, Plaintiffs shall pay Defendant his reasonable attorneys' fees, litigation expenses and costs incurred during the Dispute Resolution process consistent with the standards for awarding reasonable fees and costs found in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

7    REMEDIES

If Defendant admits or the U.S. District Court for the District of Colorado finds that Defendant has violated the terms of this Agreement, the following Remedies shall be available to Plaintiffs:

    7.1    The Court may enjoin Defendant from engaging in the conduct determined to be a violation of this Agreement and order any and all appropriate relief to correct the violation.

    7.2    Penalties:

        7.2.1    If the violation concerned Defendant's failure to acknowledge a CADI's Auditory Disability that is obvious or otherwise made known to the involved employee and failure to offer Auxiliary Aids or Services, then Defendant shall pay $1,000 in damages to CCDC.

        7.2.2    If the violation concerned Defendant's failure to provide the specifically requested Auxiliary Aid or Service in Non-emergency situations, then Defendant shall pay $2,500 in damages to CCDC.

        7.2.3    If the violation concerned Defendant's failure to provide any auxiliary aids or services after they were offered and accepted, then Defendant shall pay $5,000 in damages to CCDC.

8    MONETARY CLAIMS

Within ten (20) days of the date the Court dismisses the Civil Action, as contemplated in Section 1.2 of this Agreement, Defendant shall send a check in the amount of $100,000, made payable to the Colorado Cross-Disability Coalition Legal Program to the address in Section 10 of this Agreement.

9    RELEASES

    9.1    Effective on the date that the Civil Action is dismissed as contemplated in Section 1.2 of this Agreement, Plaintiffs, on behalf of themselves and their executors, successors, heirs, assigns, agents, and representatives, in consideration of the relief set forth herein, the sufficiency of which is expressly acknowledged, unconditionally and forever do fully and finally release, acquit, and discharge Defendant from the Released Claims.

    9.2    Plaintiffs (on their own behalf and/or on behalf of any other person or entity and/or on behalf of or as a member of any alleged class of persons) further agree not to commence, maintain, prosecute or participate in any civil action, charge, complaint or proceeding of any kind against Defendant or its employees, agents, or attorneys in any court, or before any administrative or investigative body or agency (whether public, quasi-public or private), during the term of this Agreement, except as discussed in Section 6 of this Agreement. Moreover, in the event Plaintiffs have commenced any such civil action, charge, complaint or proceeding of any kind, Plaintiffs, without further consideration, shall take such action as may be possible to terminate such proceedings.

    9.3    Effective on the date of entry of this Agreement, Defendant, in consideration of the relief set forth herein, the sufficiency of which is expressly acknowledged, unconditionally and forever do fully and finally release, acquit and discharge Plaintiffs and their executors, successors, heirs, assigns, agents, and representatives, from the Released Claims.

10    COMMUNICATION TO THE PARTIES

Any notifications or communications required or permitted to be given to any party under this Agreement shall be given in writing by depositing it in the U.S. Mail, addressed as follows, and by e-mail:

To Defendant:

Heidi M. Miller
Deputy County Attorney
Adams County Attorney's Office
4430 S. Adams County Parkway
Brighton, Colorado 80601
hmiller@adcogov.org

       To Plaintiffs:

       Kevin W. Williams
       Andrew C. Montoya
       Colorado Cross-Disability Coalition
       655 Broadway, Suite 775
       Denver, Colorado 80202
       kwilliams@ccdconline.org
       amontoya@ccdconline.org

       If any of the above addresses change, it is the responsibility of the Party whose address is changing to give written notice of said change to the other Party within thirty (30) business days following the effective date of said change.

11     ENTIRE AGREEMENT

       This Agreement sets forth the entire agreement and understanding of the Parties and, upon entry of this Agreement and continuing thereafter, shall supersede all prior agreements, arrangements and understandings between the Parties.  No representation, warranty, promise, inducement, or agreement (oral or otherwise) not set forth in this Agreement shall be binding upon all Parties.

12     MODIFICATION OR WAIVER OF AGREEMENT

       No term or provision of this Agreement may be modified or extinguished, in whole or in part, except by a writing, which is dated and signed by all Parties.  No waiver of any of the provisions or conditions of this Agreement or of any of the rights, powers or privileges of a party hereto shall be effective or binding unless in writing and signed by the party claimed to have given or consented to such waiver.

13     FREE AND VOLUNTARY ACT; NO MISTAKE

       13.1    The Parties acknowledge that they have communicated the terms of this Agreement with their respective attorneys in the Civil Action before signing this Agreement, that they were represented by their attorneys in the Civil Action in the negotiation and preparation of this Agreement, that they understand each of the terms of this Agreement, and that they have knowingly and voluntarily signed this Agreement as their own free act, without coercion or duress.

       13.2    The individual signing this Agreement on behalf of each Party agrees and acknowledges that he or she has the authority to bind that Party to this Agreement.

      13.3    Each of the Parties forever waives all rights to assert that this Agreement was the result of a mistake or law or fact.

14      INTERPRETATION OF AGREEMENT

      Each Party acknowledges and stipulates that the compromise and settlement which forms the basis of this Agreement has been arrived at after thoughtful bargaining and negotiation and represents a final mutually agreeable compromise of matters provided herein. This Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it may have been prepared by counsel for one of the parties, it being recognized that, because of arm's-length negotiations between the Parties, all Parties hereto have contributed substantially and materially to the preparation of this Agreement.

15      HEADINGS

      The headings contained in this Agreement are for convenience only, do not constitute part of the Agreement and shall not limit, be used to interpret, or otherwise affect in any way the provisions of the Agreement.

16      EXECUTION OF AGREEMENT

      This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which together shall constitute the same instrument.

DOUGLAS DARR, IN HIS OFFICIAL CAPACITY

By: _____/s/ Douglas Darr_____

Its: _____

Date: _____9-25-12_____

COLORADO CROSS-DISABILITY COALITION

By: _____

Its: _____

Date: _____

COLORADO ASSOCIATION OF THE DEAF

By: _____

Its: _____

Date: _____

TIMOTHY SIAKI

_____

Date: _____

KIMBERLEE MOORE

_____

Date: _____

MICHAELEE OWEN

_____

Date: _____

DOUGLAS DARR, IN HIS OFFICIAL CAPACITY

By: _____

Its: _____

Date: _____

COLORADO CROSS-DISABILITY COALITION

By: _Julie Re_____

Its: _Executive Director_____

Date: _9-24-12_____

COLORADO ASSOCIATION OF THE DEAF

By: _____

Its: _____

Date: _____

TIMOTHY SIAKI

_Timothy Si._____

Date: 9-24-12

KIMBERLEE MOORE

_Kimberlee Moe_____

Date: 9-24-12

MICHAELEE OWEN

_Jeanine Rybal_____

Date: 9-24-12

DOUGLAS DARR, IN HIS OFFICIAL CAPACITY

By: _____

Its: _____

Date: _____

COLORADO CROSS-DISABILITY COALITION

By: _____

Its: _____

Date: _____

COLORADO ASSOCIATION OF THE DEAF

By: __President_____

Its: __[signature]_____

Date: __9/25/2012_____

TIMOTHY SIAKI

_____

Date: _____

KIMBERLEE MOORE

_____

Date: _____

MICHAELEE OWEN

_____

Date: _____

JEANINE ROYBAL

*Jeanine Roybal*

Date: 9-24-12

13

Approved as to form:

DEFENDANT DOUGLAS DARR, IN HIS OFFICIAL CAPACITY

*/s/ Heidi Miller*

Heidi M. Miller
Deputy County Attorney
Adams County Attorney's Office
4430 S. Adams County Parkway
Brighton, Colorado 80601
hmiller@adcogov.org


PLAINTIFFS TIMOTHY SIAKI, KIMBERLEE MOORE, MICHAELEE OWEN, JEANINE ROYBAL, COLORADO CROSS-DISABILITY COALITION, AND COLORADO ASSOCIATION OF THE DEAF


_____

Kevin W. Williams
Andrew C. Montoya
655 Broadway, Suite 775
Denver, Colorado 80203
kwilliams@ccdconline.org
amontoya@ccdconline.org

Approved as to form:

DEFENDANT DOUGLAS DARR, IN HIS OFFICIAL CAPACITY


_____
Heidi M. Miller
Deputy County Attorney
Adams County Attorney's Office
4430 S. Adams County Parkway
Brighton, Colorado 80601
hmiller@adcogov.org


PLAINTIFFS TIMOTHY SIAKI, KIMBERLEE MOORE, MICHAELEE OWEN, JEANINE ROYBAL, COLORADO CROSS-DISABILITY COALITION, AND COLORADO ASSOCIATION OF THE DEAF

_____
Kevin W. Williams
Andrew C. Montoya
655 Broadway, Suite 775
Denver, Colorado 80203
kwilliams@ccdconline.org
amontoya@ccdconline.org

14



## Sign Language Interpreter?

            

EXHIBIT A

**Adams County Sheriff**
**Request for Auxiliary Aid or Service Form**

Inmate Name: _____

Inmate Number: _____

Date and time of request: _____

Has the inmate requested a specific Auxiliary Aid or Service?          Yes  /  No

    If yes, specify the type of Auxiliary Aid or Service requested: _____

_____


_____        _____
Officer/Agent Name                                                        Badge Number
(Please Print Legibly)

Date and time request provided to Supervising Officer: _____


_____        _____
Supervising Officer/Agent Name                                       Badge Number
(Please Print Legibly)

What Auxiliary Aid or Service was provided? _____

_____

    If the Auxiliary Aid or Service provided is different than what the inmate requested, state

    why: _____

Date and time Auxiliary Aid or Service was provided: _____

_____        _____
Officer/Agent Signature                                              Supervising Officer/Agent Signature

                                                                   EXHIBIT B